IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**CLEVIN PITTMAN,**

    Plaintiff,

v.                                                                            Civil Action No. **3:19CV336**

**D.M. YORK,** *et al.*,

    Defendants.

## MEMORANDUM OPINION

Clevin Pittman, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this civil action pursuant to 42 U.S.C. § 1983.[1] Pittman alleges that Defendant York subjected him to excessive force when he handcuffed him to a bed. The matter comes before the Court on Defendant D.M. York's Motion to Dismiss. (ECF No. 50.) For the reasons stated below, the Motion to Dismiss will be DENIED.

### I. Standard for Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

(1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*,

2

statutory and constitutional claims that the inmate failed to clearly raise on the face of his or her complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. Pittman's Allegations

In his Particularized Complaint, Pittman named as Defendants D.M. York, an Officer with the Chesapeake Police Department, and the Chesapeake Police Department. (ECF No. 31, at 1.) Pittman alleges as follows:[2]

> On 2-10-19 a.m. hours, police officers D.M. York and M. Sivels arrested me (Clevin Pittman) for traffic violations. My chest was hurting so I was tak[en] to Chesapeake General Hospital. . . . The two officers, D.M. York and M. Sivels, they put me in a hospital bed and I was handcuffed to both bed rails. As I (Mr. Clevin Pittman) and Officer D.M. York w[ere] talking, I asked him why do[es] he hate black people. Then after that, he started choking me to the point I thought I was going to die. Then he stopped and ran to the room door. I believe he stopped because he heard someone coming in the door and when he went to the door he told one or more nurses that they [were] going to charge me with spitting on them. As I was going up for my bond[], the video was show[n] of the action that was going on in the room. It [did] not show that I spit on anyone, but it clearly show[ed] D.M. York was choking me, Clevin Pittman. And Officer Sivels he just stood there and did nothing to help me. All this was caught on M. Sivels['s] body camera. Its clearly police brutality and he went against his oath of duties to serve and protect as well as cruel and unusual punishment.
> The Defendant D.M. York clearly violated my (8th) VIII Amendment rights of the Constitution. Which was cruel and unusual punishment that he, D.M. York, inflicted on me (Clevin Pittman).
> The Chesapeake Police Department are truly liable for his action, if it is legal or illegal, they are liable. Officer D.M. York in his apprehension and arrest on me, Clevin Pittman, he violated his code of conduct which is a dereliction of duties to serve and protect and also he committed a[n] act of police brutality and going against his code of honor or oath.
> Due to the fact Officer D.M. York of the Chesapeake Police Department did not follow their policy and procedures doing the apprehension of my arrest (Mr. Clevin Pittman).
> Because my 8th Amendment was violated, I am request[ing] the Court to award me $40 million dollar[s] in damages. Also to make D.M. York and Chesapeake Police Department liable to me for the damages.

(Part. Compl. 1–3.) By Memorandum Opinion and Order entered on January 16, 2020, the

---

[2] The Court corrects the capitalization, punctuation, and spelling and omits the paragraph numbering and emphasis from the Particularized Complaint.

3

Court construed Pittman to raise the following claims:

> Claim One: Defendant York violated Pittman's Eighth Amendment rights when he used excessive force against Pittman while Pittman was handcuffed to the hospital bed.
>
> Claim Two: Defendant York violated the Chesapeake Police Department's "policy and procedures doing the apprehension of my arrest." (*Id.* at 3.)
>
> Claim Three: Defendant Chesapeake Police Department are liable for Defendant York's actions.

(ECF No. 32, at 4.) After reviewing the Particularized Complaint under the Court's screening obligations pursuant to 28 U.S.C. § 1915(e)(2), the Court dismissed Claims Two and Three. Accordingly, only Claim One against Defendant York remains pending before the Court.

### III. Analysis

#### A. Consideration of the Extrinsic Evidence

In Claim One, Pittman contends that Defendant York violated Pittman's Eighth Amendment rights when he used excessive force against Pittman while Pittman was handcuffed to the hospital bed. Pittman does not allege that he did not spit on the officers. Instead, Pittman contends that the body camera footage did not show him spitting. Defendant York argues that "Officer Sivels' body camera video which Mr. Pittman reviewed, and references, and relied upon in framing his Particularized Complaint portrays" a very different version of the events than what was alleged by Pittman. (ECF No. 51, at 3.) Defendant York characterizes the video as showing Pittman "yelling, trying aggressively to pull away from his handcuffs and leg restraints, and generally being belligerent toward hospital staff," and "spitting into a corner after being warned by officers not to spit." (*Id.* at 3.) Defendant York claims that the video shows the officers "warn[ing] Mr. Pittman that if he continued spitting that they would" cover his face, and that "[i]nstead of deliberately or maliciously choking Pittman, Officer York attempt[ed] to push Mr. Pittman's face away to avoid being spit on . . . ." (*Id.*) Defendant York and Pittman both agree

4

that the entire sequence of events was captured on this body camera video. Both parties urge the Court to reach a conclusion in their favor based on the Court's observation of the video, which was provided as an exhibit to the Motion to Dismiss. (*Id.* at 4; Part. Compl. 2.)

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citations omitted).

The Court declines to review the video in the context of a Motion to Dismiss.[3] When reviewing a motion to dismiss, the Court may consider materials outside of the pleadings if the materials are "integral to and explicitly relied on in the complaint." *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (citation omitted). However, Defendant York fails to explain how the video footage is integral to Pittman's claim. Further, Defendant York fails to point to any controlling authority that would permit this Court to review video footage in the context of a motion to dismiss. The parties ask the Court to pass judgment solely on the Court's interpretation of the video. Although both parties provide a characterization of what they believe

---

[3] Nor will the Court consider Defendant York's accompanying affidavit. Because the affidavit submitted cannot be considered "official public records, documents central to the plaintiff's claim, [or] documents sufficiently referred to in the complaint," the Court may not consider this affidavit without construing the Motion to Dismiss as a motion for summary judgment. *See Witthohn*, 164 F. App'x at 396–97.

the video shows, at this stage, there are no facts before the Court. Despite Defendant York's labeling his section "FACTS," the Court only has before it pleading allegations. The Court will not review the video in assessing the propriety of the Complaint under Federal Rule of Civil Procedure 12(b)(6).[4]

### B. Conversion to Motion for Summary Judgment

Defendant York also suggests that the Court should convert the Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) into a Motion for Summary Judgment under Fed. R. Civ. P. 56. However, "conversion of a motion to dismiss to one for summary judgment requires that '[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Bala v. Commonwealth of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (alteration in original) (citation omitted). Therefore, "such conversion is not appropriate where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours v. Kolon Indus., Inc.*, 647 F.3d 435, 448 (4th Cir. 2011).

At this juncture, Pittman has not had an opportunity to present all materials pertinent to a motion for summary judgment. *See Bala*, 532 F. App'x at 334. Given Pittman's *pro se* status, the Court finds it appropriate to consider the evidence on summary judgment after Pittman has been fairly apprised of his need to respond with specific facts. Accordingly, the Court declines to convert the Motion to Dismiss to a Motion for Summary Judgment because of the lack of a

---

[4] To support his position, Defendant York cites to *Scott v. Harris*, 550 U.S. 372 (2007). In that case, the Supreme Court held that when a video "quite clearly contradicts the version of the story told by [a party]" (*id.* at 378), "so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for *summary judgment*." *Id.* at 380 (emphasis added). The Supreme Court explained that instead of relying on "visible fiction" put forth by the party whose account is contradicted by the video, a court should "view[] the facts in the light depicted by the videotape." *Id.* at 381. However, the matter here comes before the Court on a Motion to Dismiss, not a Motion for Summary Judgment as in *Scott*. Pittman has not had an opportunity to proffer his version of the facts. Therefore, the Court will not convert the instant motion to dismiss into one for summary judgment.

fully developed factual record before the Court. *See Finley Lines Joint Protective Bd. Unit 200, Bhd. Ry. Carmen v. Norfolk S. Corp.*, 109 F.3d 993, 996 (4th Cir. 1997) (citations omitted) (explaining that "conversion takes place at the discretion of the court").

To resolve the instant Motion to Dismiss, the Court considers only the Particularized Complaint and the Memorandum in Support of the Motion to Dismiss, taking care not to consider arguments supported only by the excluded exhibits.

### C. **Defendant York Raises Three Arguments in the Motion to Dismiss**

In his Motion to Dismiss, Defendant York argues that Pittman: 1) failed to state a claim of excessive force; 2) that Pittman's successful recovery would necessarily imply the invalidity of his two state criminal convictions for assault on a law enforcement officer; and, 3) that Defendant York is entitled to qualified immunity. These three arguments do not persuade the Court to grant the Motion to Dismiss.

#### 1. **Failure to State A Claim**

Defendant York argues that Pittman fails to state a viable excessive force claim in light of the bodycam video. At this juncture, the Court must presume the truth of Pittman's well-pleaded allegations. *Mylan Labs., Inc.*, 7 F.3d at 1134. With respect to the first contention, that Defendant York did not use excessive force, the Court previously determined that Pittman stated a claim for relief sufficient to survive the Court's screening obligations. Therefore, the Motion to Dismiss will be DENIED on that ground.

#### 2. *Heck v. Humphrey*

Next, Defendant York contends that Pittman's successful recovery would necessarily imply the invalidity of his two state criminal convictions for assault on a law enforcement officer, citing *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), for support. Defendant York attaches to his Motion to Dismiss state court records showing that Pittman was charged and

7

convicted of assault on an officer for the spitting incident that rests at the heart of this action. (ECF No. 51, at 20–24.) However, the Court fails to discern, and Defendant York fails to explain, why Pittman's conviction for spitting on an officer necessarily precludes a finding that Defendant York used excessive force.

*Heck* bars a § 1983 action if the record demonstrates that successfully prosecuting the § 1983 action would necessarily imply that the plaintiff's earlier conviction was invalid. *Id.* at 486–87. The United States Court of Appeals for the Fourth Circuit has emphasized that "[t]he *Heck* analysis requires a close factual examination of the underlying conviction." *Riddick v. Lott*, 202 F. App'x 615, 616 (4th Cir. 2006) (citations omitted). Where, as here, the plaintiff's allegations involve claims of excessive force during an arrest and the plaintiff also was convicted of charges of threatening, resisting, or assaulting a police officer, resolving the *Heck* inquiry often demands an examination of the trial record. *See id.* at 617 (alteration and omission in original) (observing that "*Heck* does not bar § 1983 actions alleging excessive force despite a plaintiff's conviction for resisting arrest because a 'state court's finding that [a plaintiff] resisted a lawful arrest . . . may coexist with a finding that the police officers used excessive force to subdue [the plaintiff]" (quoting *Martinez v. City of Albuquerque*, 184 F.3d 1123, 1127 (10th Cir. 1999))).

Defendant York's *Heck* argument falters because Pittman's conviction for spitting on an officer does not preclude Pittman from bringing an excessive force claim. Should Defendant York choose to renew his *Heck* challenge he must ensure that the proper supporting documents are attached in support thereof and raise a proper legal analysis.[5] Accordingly, the Motion to Dismiss will DENIED on this ground.

---

[5] To the extent that Defendant York renews his *Heck* challenge by means of a motion to dismiss, he also must explain, with citation to controlling authority why the Court can consider the documents in a motion to dismiss. *See* Fed. R. Civ. P. 12(d).

8

### 3. **Qualified Immunity**

Finally, Defendant York argues that he is entitled to qualified immunity "because he did not violate any of Mr. Pittman's rights, and if he did violate any of Mr. Pittman's rights, there was no clearly established law against Officer York's conduct at the time and a reasonable police officer under the circumstances would not have known the conduct was illegal." (ECF No. 51, at 11–13.) "When qualified immunity is asserted, the reviewing court should usually first ask whether the right was violated on the facts alleged, and then determine whether that right was 'clearly established.'" *LeSueur-Richmond Slate Corp. v. Fehrer*, 666 F.3d 261, 264 (4th Cir. 2012) (citing *Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009)); *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("[W]e conclude that, while the sequence set forth [in *Saucier v. Katz*, 553 U.S. 194 (2001) ] is often appropriate, it should no longer be regarded as mandatory." (first alteration in original)).

Defendant York's assertion of qualified immunity is limited to a recitation of the general jurisprudence governing qualified immunity and is based primarily on the bodycam video, which the Court will not consider here. As noted above, Pittman has adequately alleged a violation of excessive force based on the record the Court can consider at this procedural posture. Furthermore, Defendant York fails to demonstrate that the right to not be subjected to excessive force was not clearly established. *See Allen v. City of Fredericksburg*, No. 3:09CV63, 2011 WL 782039, at *11 n.5 (E.D. Va. Feb. 22, 2011) (discussing the methodology for briefing the defense of qualified immunity). Accordingly, Defendant York's Motion to Dismiss based upon qualified immunity will be DENIED.

## IV. Conclusion

For the foregoing reasons, the Motion to Dismiss (ECF No. 50) will be DENIED. Any party wishing to file a motion for summary judgment should do within sixty (60) days of the date of entry hereof.

An appropriate Order will accompany this Memorandum Opinion.

/s/
M. Hannah Lauck
United States District Judge

Date: Jan. 21, 2021
Richmond, Virginia